# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4151 | **DATE** | 4/3/2001 |
| **CASE TITLE** | Administrative Committee, etc. vs. Jeanie Jay, etc. et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. In sum, Committee wins on its claim against Jeanie Jay in her individual capacity but continues to lose its attempt to stick her in either of her representative capacities. Judgment is ordered to be entered in favor of Committee and against Jeanie jay individually in the sum of $8,870.41.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | APR 03 2001 | |
| | Docketing to mail notices. | | date docketed | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 4/3/2001 date mailed notice | |
| SN | courtroom deputy's initials | 01 APR -3 PM 12: 32 | SN | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ADMINISTRATIVE COMMITTEE, etc., )
)
        Plaintiff, )
)
v. ) No. 00 C 4151
)
JEANIE JAY, etc., et al., )
)
        Defendants. )



DOCKETED APR 0 3 2001

MEMORANDUM OPINION AND ORDER

This ERISA-based action and its counterpart in the state court system (In re Estate of Andrew Jay, Case No. 00 P 121 in the Circuit Court of the Twelfth Judicial Circuit, Will County, Illinois) seem likely to have generated enough paper already so that photocopying at customary rates may well have swallowed up more than the grand sum of $8,870.41 that is in dispute. But (to paraphrase Alfred Lord Tennyson's Charge of the Light Brigade) ours not to reason why--perhaps the parties and their counsel can persuade themselves that they have a respectable historical antecedent in the two-centuries-old statement by Charles Cotesworth Pinckney, then the United States Minister to the French Republic:

> Millions for defence, but not a damned penny for tribute.[1]

---

[1] [Footnote by this Court] According to Bartlett's Familiar Quotations, Minister Pinckney's statement was bowdlerized in the cenotaph dedicated to his memory in St. Michael's Church in Charleston, South Carolina to read instead:

> Millions for defence, but not one cent for tribute.

In any event, at long last the Administrative Committee of the Wal-Mart Stores, Inc. Associates' Health and Welfare Plan ("Committee") has gotten around to what it should have done in the first place: Instead of pursuing its employee Jeanie Jay in her capacities as personal representative and as administrator of the estate of her minor son Andrew, it is seeking straightforward relief against Ms. Jay in her individual capacity. It has filed a Fed. R. Civ. P. ("Rule") 56 motion for summary judgment based on Ms. Jay's express undertakings pursuant to the terms of the Plan and of the Medical Loan Agreement (Subrogation Agreement) ("Agreement") that she signed on April 15, 1996. In turn Ms. Jay has filed a response and cross-motion for summary judgment, accompanied by another bulky filing (this time about 3/4" thick) that further compounds the litigants' affront to our nation's forests. But at least the case is finally ripe for disposition.

In one respect counsel for Ms. Jay has it dead right: It is nothing short of outrageous for the Committee to have wasted this Court's resources and oppressed Ms. Jay and her counsel by pursuing indirect and problematic routes to an end that could have been reached so directly and so easily (and so swiftly!). It may be that the Committee believes it worthwhile, in the obviously uneconomic pursuit in this case of a goal that it apparently considers to have broader implications in its overall administration of its Fund, to have acted as it has. But this is

2

a single lawsuit against a single adversary for an extremely modest amount,[2] and it simply will not do for the deep-pocket Committee and its counsel to engage in such global warfare on several legal fronts when a quick and limited foray would have obtained a judgment for the full amount sought. More on this subject later.

As for the merits, this Court's earlier opinions rejecting the Committee's other efforts to obtain relief directly from Andrew Jay have stemmed from the Committee's mistaken targeting of Andrew as its claimed debtor (Andrew, after all, is the economic real party in interest where his mother is named in her representative rather than her individual capacity). Now that the Committee has finally placed Jeanie Jay personally in its sights, the substantive claim is an easy one to resolve. In accordance with the Plan, Ms. Jay signed the Agreement, which stated in relevant part:

> The undersigned acknowledges that they have read the Rights of Reimbursement, Reduction and/or General Subrogation of the Wal-Mart Group Health Plan (the "PLAN"). Please refer to your Benefit Book under "THE RIGHTS TO REIMBURSEMENT AND REDUCTION" section.

---

[2] Ms. Jay's current Mem. 1 quotes from a book issued under the auspices of the ABA's Tort & Insurance Practice Section, Thomas Lawrence & John Russell, <u>ERISA Subrogation: Enforcing Recoupment Provision in ERISA Covered Health and Disability Plans</u> (2000):

> All would agree it would not make sense to spend $10,000 to collect a $5,000 recoupment claim.

3

> This Subrogation Agreement is considered an interest
> free medical loan. Repayment to the Plan of 100% will
> be made at the time settlement is received by the
> Associate [Ms. Jay] and/or Dependent [Andrew].
>
> \*   \*   \*
>
> The Wal-Mart Group Health Plan has the right to 100%
> repayment of the loan if you receive payment from
> another insurance or individual. Any and all
> attorneys' fees are the responsibility of the
> participant.

Because the Plan paid $8,870.41 in medical expenses for treatment of injuries that Andrew had sustained as the result of a dog bite, Jeanie Jay has an absolute obligation to honor her promise (see, e.g., Health Cost Controls of Ill., Inc. v. Washington, 187 F.3d 703, 711-12 (7th Cir. 1999); Ryan v. Federal Express Corp., 78 F.3d 123 (3d Cir. 1996)).

Counsel for Ms. Jay responds not by disputing her contractual undertaking, but rather by attacking federal jurisdiction over the Committee's claim, citing Mertens v. Hewitt Assocs., 508 U.S. 248 (1993) and Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Wells, 213 F.3d 398 (7th Cir. 2000). It is of course true that in a different context Mertens, 508 U.S. at 255 confirms that only equitable actions may be brought under ERISA by fiduciaries--here the Committee (see 29 U.S.C. §1132(a)(3)(B)). But Mertens, id. also characterizes restitution as "a remedy traditionally viewed as 'equitable'"--a remedy contrasted with straight-out money damages, which it labeled "the classic form of legal relief" (id., emphasis in original). And our Court

of Appeals' case on which Ms. Jay seeks to rely (brought by the same Committee and Plan that are litigants here) does not aid her, for it recognizes the identical dichotomy and finds that the existence of a constructive trust under a situation similar to (but legally distinguishable from) that involved here provides the necessary equitable rubric for federal jurisdiction.

As just suggested, a constructive trust approach does not precisely fit here, for the recovery (and hence the actual fund) is not Ms. Jay's but Andrew's. But what <u>does</u> fit is <u>restitution</u>, which <u>Mertens</u> itself specified as "equitable" and which <u>Health Cost Controls</u>, 187 F.3d at 710 (among other cases) has reconfirmed as a source of federal jurisdiction. It must be remembered that so far as the medical provider is concerned, it is the adult parent (and not the injured minor) to whom it looks for payment for its services. When the Plan steps in to make good on that obligation pursuant to its undertaking to the Plan-covered employee, it is extending credit to the parent (the employee). And so when the employee's obligation for repayment to the Plan is triggered ("at the time settlement is received by the Associate and/or Dependent"), what is involved is a classic instance of restitution--an equitable remedy supporting federal jurisdiction.

Apparently not content with a confirmation of that right, Committee's counsel (obviously with other--and surely much

larger--fish to fry) also asks this Court to reconsider its
February 9, 2001 memorandum order that rejected the same claim
against Jeanie Jay in her representative capacities because of
the earlier state court judgment that had dealt with that issue.
This Court's ruling was meticulous in making the distinction that
it did, and the motion for reconsideration violates the basic
ground rule against asking a court to take a fresh look at a
fully-examined ruling just because the losing litigant thinks the
court had it wrong for the same reasons that the loser originally
advanced. That principle has been oft-stated by our Court of
Appeals, most frequently by citing and quoting from an earlier
opinion of this Court that was expressly adopted--not merely
affirmed--by the Court of Appeals. So Committee's motion for
reconsideration is denied.

That brings back into focus the point made earlier in this
opinion and suggested by the quotation in n.2: There is
something seriously amiss in the litigation tactics employed by
the Committee and its counsel here, bringing a legal elephant gun
(or in this instance more than one, for they have actively
litigated the issues in the state courts as well--and continue to
do so on appeal there) to kill an under-$9,000 flea. And it will
not do for counsel to say "we were only following our client's
orders," for a lawyer has an affirmative professional obligation
not to do a client's bidding when its aim involves the imposition

of unwarranted burdens on the opponent wholly incommensurate with the dispute involved (see, e.g., this District Court's LR 83.51.2(f)(1) and, as a medium for sanctioning such activity, 28 U.S.C. §1927 ("Section 1927")).

When the entire course of this litigation (either with or without reference to the state court battles) is taken into account, it is difficult to escape the conclusion that the Committee's counsel have indeed "multiplie[d] the proceedings in any case unreasonably and vexatiously" (Section 1927).[3] In light of the amply demonstrated litigiousness of the Committee and its counsel, which would almost surely presage another appeal, Ms. Jay and her lawyer may well prefer to leave the matter at rest, with the sole "sanction" on their opponents taking the form of the criticism voiced in this opinion. This Court will leave the institution or noninstitution of such satellite litigation to them.

In sum, Committee wins on its claim against Jeanie Jay in her individual capacity but continues to lose its attempt to

---

[3] Again look at how readily a judgment could have been obtained against Ms. Jay (either here or, without having to wrestle with the federal jurisdictional issue, in the state court) via the simple route of suing for breach of her unequivocal contractual undertaking. It's true that she has not surrendered outright in those terms (her current Mem. 2 n.1 continues the offer of Andrew's estate to settle "pursuant to the common fund doctrine"--that is, for less than 100¢ on the dollar). But after all, that's what a breach of contract action is for.

stick her in either of her representative capacities. Judgment is ordered to be entered in favor of Committee and against Jeanie Jay individually in the sum of $8,870.41.

                                            _____
                                            Milton I. Shadur
                                            Senior United States District Judge

Date: April 3, 2001